*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SHANE JEREMY HAWKINS,

        Defendant-Appellant.

UNPUBLISHED
May 23, 2024

No. 364000
Monroe Circuit Court
LC No. 2016-243183-FH

Before: MALDONADO, P.J., and PATEL and N. P. HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d (penetration by force or coercion, or a victim 13 to 16 years of age); and one count of accosting a minor for an immoral purpose, MCL 750.145a. Defendant was sentenced as a third-offense habitual offender, MCL 769.11, to serve 144 to 360 months' imprisonment for each of his CSC-III convictions, and 1,533 days' jailtime for his accosting a minor for an immoral purpose conviction. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In July 2016, when the victim was only 14 years old, she visited family friends. While there, defendant, who was 32 years old, sexually assaulted the victim. Initially, when the two were alone outside at a bonfire, defendant approached the victim in what she believed to be a sexual manner. She felt uncomfortable, backed away, and retreated to the house. While in the kitchen, defendant pinned the victim against the wall. The victim told defendant her dad would kill defendant if he found out, hoping this would stop defendant. It did not.

The victim sat on the couch in the living room. Defendant unbuckled his pants as he approached the victim and exposed his penis. He put his penis near the victim's face, which she perceived to be an attempt to make her perform oral sex. The victim turned her head away and tried to move away from defendant. Defendant grabbed the victim's leg, pulled her onto her back on the couch, and lowered her shorts and underwear around her ankles. Defendant bit the victim's inner thigh, digitally penetrated her vagina, and penetrated her vagina with his penis. The victim

testified that these actions caused her to feel pain. The bites caused bruising, while the penetration caused soreness.

Defendant was tried in September 2022.[1] Defendant testified on his own behalf. He denied that he accosted or assaulted the victim. After a one-day trial and only about 30 minutes of deliberation, the jury returned a verdict of guilty as to each of the crimes charged. Defendant was sentenced as noted, and this appeal followed.

## II. PROSECUTORIAL MISCONDUCT[2]

Defendant, in his Standard 4 brief, argues the prosecutor committed misconduct warranting reversal by shifting the burden of proof, denigrating the defense during closing and rebuttal arguments, and vouching for the credibility of prosecution witnesses. We disagree.

Because defendant did not preserve the challenged statements by contemporaneous objections and requests for curative instructions, *People v Evans*, 335 Mich App 76, 88; 966NW2d 402 (2020), our review is for plain error affecting defendant's substantial rights, *People v Carines*, 460 Mich 750, 762-763; 597 NW2d 130 (1999).[3] "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. To satisfy the third element, the defendant must show that the error "affected the outcome of the lower court proceedings." *Id*. "[O]nce a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

We review prosecutorial misconduct issues on a case-by-case basis by reviewing "the prosecutor's remarks in context to determine whether the defendant was denied a fair and impartial trial." *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017) (cleaned up). "The prosecutor's statements are to be evaluated in light of defense arguments and the relationship the

---

[1] Defendant was initially convicted by a jury in March 2017. Our Supreme Court reversed defendant's convictions and remanded for a new trial. *People v Hawkins*, 507 Mich 949, 949-950 (2021). This is an appeal from that retrial.

[2] We employ the phrase "prosecutorial misconduct" as a term of art synonymous with "prosecutorial error," not as an indication that the prosecution engaged in intentional misconduct. *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015).

[3] Defendant cites to a portion of the prosecutor's rebuttal argument when trial counsel objected. However, the objection was not on the basis of the prosecutor shifting the burden of proof, denigrating the defense, or vouching. Instead, defendant asserted the prosecutor was exceeding the scope of rebuttal argument by moving beyond a response to the arguments raised in defendant's closing argument. "An objection on one ground is not sufficient to preserve an issue on a different ground." *People v Solloway*, 316 Mich App 174, 197; 891 NW2d 255 (2016). Additionally, there is no dispute defendant never requested a curative instruction during his objection.

comments bear to the evidence admitted at trial." *Id*. (cleaned up). "Generally, prosecutors are given great latitude regarding their arguments and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *Id*. (cleaned up). A prosecutor "need not speak in the blandest of all possible terms" when arguing the case. *People v Blevins*, 314 Mich App 339, 355; 886 NW2d 456 (2016) (cleaned up). "Further, we cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003). Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

First, defendant argues that the prosecution committed misconduct by shifting the burden of proof. "A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). But "attacking the credibility of a theory advanced by a defendant does not shift the burden of proof." *People v McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005).

Defendant cites to the following portion of the prosecutor's rebuttal argument:

> *The Prosecutor*: Now, what makes sense here? What reason does [the victim] have to fabricate these allegations? Does that—
>
> * * *
>
> *The Prosecutor*: What did [the victim] have to lose? We know what she lost. She lost Cheryl Hicks, someone she considered to be her grandmother. She lost [NH], her best friend. Does the defense theory make sense?
>
> Ladies and gentlemen, we have proven each element of each charge beyond a reasonable doubt. Find the defendant guilty of all three charges. Thank you.

Defendant claims the prosecutor shifted the burden of proof by arguing it would not make sense for the victim to fabricate the allegations in the present case. We disagree. During his opening statement, trial counsel stated that this was a "he said, she said case." Defendant testified on his own behalf and denied that he accosted or assaulted the victim. During closing argument, trial counsel framed the case to the jury as one in which the jury must decide whether the victim or the defendant was telling the truth. Therefore, the defense theory was that the victim was lying about the sexual assault. As this Court has explained, "attacking the credibility of a theory advanced by a defendant does not shift the burden of proof." *McGhee*, 268 Mich App at 635. The prosecutor was well within constitutional bounds when arguing the jury should disregard defendant's theory and believe the victim because she had no reason to lie.

Defendant next argues that the prosecutor committed misconduct by denigrating defense counsel. Defendant asserts, "[T]hroughout his[sic] closing argument and rebuttal argument, the prosecutor argued that [trial] counsel engaged in diversionary tactics." Defendant also claims the prosecutor denigrated the defense by asserting trial counsel "will try to creat[e] the reasonable doubt" in this case. Defendant further contends the prosecutor erred by arguing trial "counsel's

job was to get his client acquitted[].” But defendant does not cite to the transcript pages where these alleged improper arguments occurred. We have reviewed the prosecutor's closing and rebuttal arguments in their entirety and find no merit in defendant's arguments. The prosecutor did not mention trial counsel during closing argument. During the prosecutor's rebuttal argument, she simply stated that trial counsel wanted the jury to focus on the victim's actions and inactions during and after the assault. “[I]t is not improper for a prosecutor to comment on the weakness of a defense theory.” *People v Clark*, 330 Mich App 392, 435; 948 NW2d 604 (2019). The prosecutor did not state that trial counsel was trying to trick the jury, was attempting to fabricate reasonable doubt, or that his job was to get defendant acquitted. Defendant's misconduct claims are not supported by the record.

Lastly, defendant contends the prosecutor committed misconduct by vouching for the credibility of witnesses. Indeed, “[a] prosecutor may not vouch for the credibility of a witness by conveying to the jury that [she] has some special knowledge that the witness is testifying truthfully.” *Clark*, 330 Mich App at 434. However, a “prosecutor may . . . argue from the facts that a witness is worthy of belief.” *Id*. And “a prosecutor may comment on [her] own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes.” *People v Jackson (On Reconsideration)*, 313 Mich App 409, 426; 884 NW2d 297 (2015) (cleaned up). During the prosecutor's rebuttal argument, she argued the jury should determine the victim was credible because she did not have a reason to lie. The prosecutor never asserted that she had some special reason to know the victim was telling the truth, but instead, merely encouraged the jury to consider the circumstances surrounding the victim's testimony. This Court has repeatedly held that an argument related to why the jury should believe a certain witness on the basis of the facts admitted at trial is not an instance of vouching. *Jackson*, 313 Mich App at 426; *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). This is especially true in a case such as this, where the ultimate decision of the jury comes down to a credibility battle between two witnesses. *Jackson*, 313 Mich App at 426. The prosecutor did not engage in any misconduct that deprived defendant of a fair trial.

## III. JUDICIAL BIAS

In his Standard 4 brief, defendant argues that the trial judge pierced the veil of impartiality and violated defendant's right to a fair trial for an array of reasons. We disagree.

Because defendant did not raise an issue regarding the trial judge's alleged bias during the lower court proceedings, this argument is not preserved for our review. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Accordingly, our review is for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 762-763.

“The Sixth Amendment of the United States Constitution and article 1, § 20 of the Michigan Constitution guarantee a defendant the right to a fair and impartial trial.” *People v Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006). As part of that right to a fair and impartial trial, “[a] criminal defendant is entitled to a neutral and detached magistrate.” *Jackson*, 292 Mich App at 597. “A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality.” *Id*. at 598 (cleaned up). “A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality.” *Stevens*, 498 Mich at 170.

"A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. "Judicial misconduct may come in myriad forms, including belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *Id*. at 172-173 "A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality." *Id*. at 171. When evaluating the totality of the circumstances regarding a claim of judicial impartiality,

> the reviewing court should inquire into a variety of factors including, but not limited to, [(1)] the nature of the trial judge's conduct, [(2)] the tone and demeanor of the judge, [(3)] the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, [(4)] the extent to which the judge's conduct was directed at one side more than the other, and [(5)] the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [*Id*. at 164.]

Defendant raises a number of grounds on which he believes the trial judge pierced the veil of judicial impartiality and violated defendant's right to a fair trial. First, defendant contends that Detective Michael Boczar, who testified for the prosecution at trial, served as the trial judge's bailiff and thus the trial judge had inherent bias when he allowed Detective Boczar to present hearsay testimony. Defendant has not cited any factual support for his allegation that Detective Boczar was the trial judge's bailiff. The prosecution asserts Detective Boczar was not and never has been the trial judge's bailiff. There is no support in the record for the claim that the trial judge had a reason to favor Detective Boczar. As this Court has explained, "[A] ruling against a defendant, even if erroneous, does not create a serious, objective risk of actual bias that rises to an unconstitutional level." *People v Roscoe*, 303 Mich App 633, 647-648; 846 NW2d 402 (2014). Moreover, Detective Boczar's testimony regarding defendant's statements during his interrogation was not hearsay. "Admissions by a party are specifically excluded from hearsay and, thus, are admissible as both impeachment and substantive evidence under MRE 801(d)(2)." *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). The trial judge did not err regarding the admission of Detective Boczar's testimony.

Next, defendant contends that the trial judge pierced the veil of judicial impartiality by making comments to defendant during the trial that indicated to the jury that the trial judge did not like defendant or think he was trustworthy. But both comments identified by defendant occurred when the jury was outside of the courtroom. The comments identified by defendant could not have improperly influenced the jury when the jury did not hear them. See *People v Stevens*, 498 Mich 162, 171; 869 NW2d 233 (2015) ("A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct *improperly influenced the jury* by creating the appearance of advocacy or partiality against a party.") (emphasis added).

In addition, defendant argues that the trial judge pierced the veil of judicial impartiality during the sentencing hearing by ignoring this Court's previous opinion setting the guidelines

minimum sentence range[4] and commenting on the victim being required to testify twice because of the reversal of defendant's convictions by our Supreme Court. But because these comments were made after the jury returned its verdict, the comments could not have "improperly influenced the jury." *Id*.

There was no plain error affecting defendant's substantial rights related to the allegations of judicial bias.

## IV. SENTENCING ISSUES AND INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues he is entitled to be resentenced because the trial court erred when assessing points for offense variables (OVs) 3, 4, and 13. Alternatively, he claims trial counsel was ineffective for failing to raise challenges to those OV scores. We disagree.

To preserve a sentencing issue for appeal, the issue must be raised "at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals." *People v Clark*, 315 Mich App 219, 223; 888 NW2d 309 (2016) (cleaned up). It is undisputed defendant did not perform any of those actions and thus this issue is unpreserved. Accordingly, our review is for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 762-763.

"The trial court's factual determinations regarding offense variables must be supported by a preponderance of the evidence." *People v Muniz*, 343 Mich App 437, 452-453; 997 NW2d 325 (2022). "Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *People v McGraw*, 484 Mich 120, 133; 771

---

[4] Defendant claims the trial court violated the rule of stare decisis when it calculated a new guidelines minimum sentence range after the second trial. He relies on the following statement from this Court's first opinion in this case:

> Defendant's minimum sentence of 144 months is within the corrected minimum sentencing guidelines range of 87 to 217 months. However, the court relied upon inaccurate information in fashioning defendant's sentence, i.e., that he was a fourth habitual rather than third habitual offender. Accordingly, we must vacate defendant's sentences and remand for resentencing based on accurate information. [*People v Hawkins*, unpublished per curiam opinion of the Court of Appeals, issued January 17, 2019 (Docket No. 339020), p 9, vacated in part 505 Mich 937 (2019).]

Defendant's reliance on the doctrine of stare decisis is misplaced because this Court's opinion was ultimately reversed by our Supreme Court. *Hawkins*, 507 Mich at 949. "The doctrine of vertical stare decisis, as defined by *Black's Law Dictionary* (10th ed), p 1626, is '[t]he doctrine that a court must strictly follow the decisions handed down by higher courts within the same jurisdiction.' " *In re AGD*, 327 Mich App 332, 339; 933 NW2d 751 (2019). Until the decision is overruled, "all lower courts and tribunals are bound by that prior decision and must follow it even if they believe that it was wrongly decided or has become obsolete." *Id*. at 340 (cleaned up). Because the decision of this Court was reversed, the trial judge was not required to follow it. *Id*.

NW2d 655 (2009). "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a [presentence investigation report (PSIR)], plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *Muniz*, 343 Mich App at 453 (cleaned up).

## A. OV 3

Defendant argues OV 3 should have been assessed zero points instead of five points. "OV 3 designates the number of points to be assessed for physical injury to a victim." *People v Johnson*, 342 Mich App 90, 94; 992 NW2d 668 (2022), citing MCL 777.33(1). "The statute requires an assessment of . . . five points when the victim suffered '[b]odily injury not requiring medical treatment,' MCL 777.33(1)(e); and zero points when the victim suffered no physical injury, MCL 777.33(1)(f)." *Johnson*, 342 Mich App at 94-95. "This Court has defined 'bodily injury' as including 'anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence.' " *Id*. at 95, quoting *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011). In *People v Maben*, 313 Mich App 545, 551; 884 NW2d 314 (2015), this Court upheld a trial court's determination a victim suffered a bodily injury when, after an assault, the victim had visible redness and complained of soreness.

The victim testified that she was sexually assaulted by defendant. Before any sexual penetration occurred, defendant bit the inside of the victim's thighs three or four times. The victim stated this was painful and caused bruising. Defendant then penetrated the victim's vagina with his finger and penis. The victim testified the penetration was painful. In the PSIR, the victim claimed she suffered from vaginal soreness after the assault. A bodily injury is "anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *Johnson*, 342 Mich App at 95 (cleaned up). As a result of defendant's sexual assault of the victim she suffered pain from the biting, digital penetration, and penile penetration. She bruised because of the biting, and had soreness because of the penetration. This was, simply put, "an unwanted physically damaging consequence" of defendant's sexual assault. *Id*. (cleaned up). Because a preponderance of the evidence supported an assessment of five points for OV 3, MCL 777.33(1)(e), the trial court did not err, plainly or otherwise, in doing so. *Carines*, 460 Mich at 762-763.

## B. OV 4

Next, defendant argues the trial court plainly erred when it assessed 10 points for OV 4 when it should have been assessed zero points. Under MCL 777.34(1), OV 4 "is psychological injury to a victim." OV 4 is properly scored at 10 points when "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). "In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.34(2). "[T]he trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Lampe*, 327 Mich App 104, 114; 933 NW2d 314 (2019) (cleaned up). The trial court is also permitted to rely on the victim's demeanor during trial to determine whether the

victim suffered a psychological injury. *People v Waclawksi*, 286 Mich App 634, 681; 780 NW2d 321 (2009).

The victim's impact statement after defendant's original convictions was included in the PSIR for the present convictions. In it, the victim provided the following explanation of her mental state after the assault:

> Because of how long I have known [defendant] and his family, what he has done to me has had a huge impact on me mentally and emotionally. I have difficult times consentrating [sic]. I've shut everybody out. I break down crying out of no where no matter where it be. I've had to "take breaks" at school to where I exit my classroom and go to the bathroom and cry. Me bestfriend [sic] was his son . . . because of what he has done I don[']t know how well our relationship is going to be. I have flashbacks that I cannot control and I want to get them out of my head. I'm 14 years old and [defendant] has taken something from me that I cannot ever get back, and that is my virginity. I have difficulty sleeping some nights which causes me to be tired for school the next day. I could keep going but to sum it up, this happening has impacted me quite a bit. It's not just something I can get over within weeks or months, probably even years. It is just an unfortunate thing. What has happened has impacted my attitude, my feelings, my thoughts, has disrupted my school life, relationships . . . . It's just not fair. That's all I have to say. [Ellipses in original.]

Additionally, at trial, the woman with whom the victim lived, V. Hall, was asked how the victim changed after she was sexually assaulted by defendant. Hall responded in the following manner: "Definite depression. [The victim] didn't seem to care like what she looked like. You know, I mean she would go to school in sweatpants and sweatshirts. I mean she was angry, cried a lot. You know, we got counseling. We ended up getting counseling for her."

We find that the record supported a conclusion the victim suffered a serious psychological injury that required professional treatment. The trial court was permitted to "rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *Muniz*, 343 Mich App at 453 (quotation marks and citation omitted). Hall's testimony allowed, and potentially demanded, the inference that the victim obtained counseling for mental-health issues caused by defendant's assault. *Id*. Further, the victim did not actually have to seek counseling for 10 points to be assessed for OV 4. MCL 777.34(2) ("In making this determination, the fact that treatment has not been sought is not conclusive."). We find that the trial court did not err, plainly or otherwise, when it assessed 10 points for OV 4. *Lampe*, 327 Mich App at 114; MCL 777.34(1)(a).

## C. OV 13

Defendant also contends that the trial court plainly erred by assessing 25 points for OV 13, which pertains to "continuing pattern of criminal behavior." MCL 777.43(1). "The crimes considered in assessing OV 13 include 'all crimes within a 5-year period, including the sentencing offense, . . . regardless of whether the offense resulted in a conviction.' " *Muniz*, 343 Mich App at 453, quoting MCL 777.43(2)(a). "MCL 777.43(1)(c) provides for a score of 25 points if '[t]he

offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person[.]' " *People v Carlson*, 332 Mich App 663, 669-670; 958 NW2d 278 (2020). "If no pattern of felonious criminal activity existed, the trial court must score OV 13 at zero points." *People v Carll*, 322 Mich App 690, 704; 915 NW2d 387 (2018), citing MCL 777.43(1)(g).

In assessing 25 points for OV 13, the trial court relied on the three convictions in the present case. Defendant asserts this was improper because all of the convictions arose from a single felonious act. Defendant contends this Court is bound by *Carll*, in which this Court concluded "a single felonious act cannot constitute a pattern . . . ." *Carll*, 322 Mich App at 704. We disagree. Defendant took three separate actions: (1) he accosted the victim for the immoral purpose of having her engage in sexual relations with him; (2) he digitally penetrated the victim's vagina; and (3) he penetrated the victim's vagina with his penis. All of these, by law, were separate criminal acts. See *People v Matuszak*, 263 Mich App 42, 50; 687 NW2d 342 (2004) (holding "the Legislature intended to punish separately each criminal sexual penetration"). Because defendant's three convictions arose out of three separate, criminal actions, they qualify as a continuing pattern of criminal behavior under *Carll*, 322 Mich App at 705-706. Accordingly, the trial court did not err, plainly or otherwise, when it assessed 25 points for OV 13. *Id.*

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Alternatively, defendant argues that trial counsel was ineffective for failing to raise the proposed challenges to the OV scores. A defendant must do one of three things to preserve a claim of ineffective assistance of counsel for appellate review: raise the issue in a motion for a new trial, raise the issue in a motion for an evidentiary hearing, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or raise the issue in a motion to remand for an evidentiary hearing, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant did none of these things and thus our review of this unpreserved issue is limited to errors apparent on the record. *People v Head*, 323 Mich App 526, 538-539; 917 NW2d 752 (2018).

The United States and Michigan Constitutions afford criminal defendants the right to effective assistance of counsel. *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023), citing Const 1963, art 1, § 20; US Const Am VI; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (cleaned up). Defense counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 US at 688, 690; see also *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012).

As discussed, defendant's arguments related to the assessment of points for OVs 3, 4, and 13 lack merit. Consequently, any objection by trial counsel on the grounds raised on appeal would have been futile. We will not find trial counsel to be ineffective where an objection would have been meritless or futile. *Head*, 323 Mich App at 539.

## V.  CONCLUSION

For the reasons stated above, we affirm defendant's convictions and sentences.  Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Sima G. Patel
/s/ Noah P. Hood